**Hubert L. HUFF and Joan Huff, Appellants,**

v.

**Jean F. HARRELL, Individually and as Independent Administratrix of the Estate of T.A. Harrell, Jr., Appellees.**

No. 13–95–216–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 27, 1996.

Rehearing Overruled Jan. 16, 1997.

---

1. The record does not reflect whether the appellee made inquiry into the nature of the lawyer's advise in this regard!

M.W. Meredith, Jr., Meredith, Donnell & Abernethy, Clay E. Coalson, Carlos A. Mattioli, Corpus Christi, for appellant.

William Robert Anderson, III, Sorrell, Anderson & Lehrman, Corpus Christi, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and YAÑEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellants, Hubert L. Huff and Joan Huff (the Huffs), leased a convenience store in Ingleside, Texas, to Harrell Petroleum Company (Harrell Petroleum), a Texas corporation, for a period of fifteen years, beginning in July 1981. With the Huffs' consent, the lease was assigned to J's Food Stores in 1985. When J's failed to perform on the lease in 1989, the Huffs looked to Harrell Petroleum and majority owner, T.A. Harrell, Jr. (Harrell), for performance. Harrell died in 1990. Alleging that Harrell gave an oral personal guarantee in exchange for the consent, the Huffs sued Jean F. Harrell, individually and as independent administratrix of the Estate of T.A. Harrell, Jr. (Estate), and Jackie Hines. The trial court signed a take-nothing judgment against the Huffs on January 25, 1995. The Huffs have limited their appeal to appellees, the Estate and its administratrix, Jean Harrell. The Huffs challenge the judgment by fifteen points of error. We affirm.

In 1981, the Huffs sold their interest in a convenience store operation to Harrell Petroleum. Leases for store facilities located on property that the Huffs owned in Corpus Christi and in Ingleside were included in this transaction. Only the Ingleside lease is at issue in this case. Until 1985, Harrell Petroleum paid rent and ad valorem taxes, provided insurance, and was responsible for the maintenance of the property. In October 1985, Harrell Petroleum sold its convenience store operation to J's, which was owned by Ashraf Kapadia, and sought to assign the

leases to J's. However, the lease terms required Harrell Petroleum to obtain the Huffs' consent prior to any assignment.

The Huffs contend that they were not initially in favor of the assignment to J's because of Kapadia's poor financial showing. However, when they realized that Harrell Petroleum would remain bound by the terms of the lease should the assignment fail, the Huffs consented to the assignment. The Huffs argue that they consented to the assignment in exchange for Harrell's oral personal guarantee. There were no witnesses to this oral agreement.

J's failed to comply with the terms of the lease almost immediately by not providing the Huffs with accountings of sales for 1985 and 1986. These accountings were essential to calculations of additional rent that was due when net grocery sales at a leased location exceeded $300,000. In May 1987, the Huffs sent a letter to J's demanding an accounting and any additional rent that was due. In addition, the Huffs noted that J's base rent payments were delinquent or short for the months of April and May. In accordance with the consent agreement, the Huffs sent a copy of the demand letter to Harrell Petroleum. During 1988, J's ceased to conduct business at the Ingleside location, but the Huffs were not informed of this fact. Nevertheless, J's continued to pay rent until June 1989. After several attempts to contact Kapadia about J's lack of performance, the Huffs notified Harrell of the default. Between J's last payment in June 1989 and Harrell's death in March 1990, the Huffs received no payments on the lease obligation from either J's, Kapadia, Harrell Petroleum, or Harrell. In addition, the Huffs were forced to pay ad valorem taxes on the property which, according to the lease, were the responsibility of the lessee or its assignee. During this time, the Huffs did not assert any right to satisfaction under Harrell's alleged oral guarantee.

After discovering that Kapadia was not financially able to meet J's obligations under the assignment, the Huffs sought relief from Harrell Petroleum and Harrell. According to the Huffs, it was shortly thereafter that they learned of Harrell Petroleum's dissolution in April 1987. The Huffs claim that notice of dissolution was not given to them or other creditors. In addition, they assert that some minority shareholders of Harrell Petroleum were unaware of the dissolution. Although all of Harrell Petroleum's assets and liabilities were assumed by Harrell, and later his Estate, the Huffs' claim was not honored.

The Huffs then filed suit against the Estate and Harrell's beneficiaries based on 1) breach of contract, 2) foreclosure of equitable lien, 3) fraud, 4) conspiracy, 5) interference with a contract, and 6) breach of Harrell's oral guarantee. The jury found the following:

1) Harrell did not orally agree to assume primary responsibility for the lease;

2) Harrell Petroleum breached the Ingleside lease;

3) Harrell and Harrell Petroleum were alter egos;

4) Harrell Petroleum was used as an unfair device to evade an existing legal obligation;

5) Harrell denuded Harrell Petroleum of its assets;

6) the net value of Harrell Petroleum's assets at the time of the dissolution was $505,080;

7) Harrell or his Estate paid out $741,847 on behalf of Harrell Petroleum since its dissolution;

8) the Huffs were entitled to damages in the amounts of $67,200 for rent and $9,400.97 for ad valorem taxes;

9) the Huffs were not entitled to compensation for repair and preservation of the Ingleside lease property;

10) the Huffs were entitled to $25,000 to $30,000 in attorney's fees for trial preparation and trial; and

11) Hugh Huff took exclusive possession of the Ingleside property on January 11, 1990.

Each party filed motions for judgment on the verdict, and the trial court rendered a take nothing judgment against the Huffs.

### Judicial Admissions and Waiver

By their first point of error, the Huffs contend that the trial court erred in entering a take-nothing judgment against them because appellees judicially admitted that Harrell assumed the lease obligation of Harrell Petroleum, and the jury found that the Huffs sustained damages when Harrell Petroleum breached the lease.

According to the Huffs, appellees made the following statement in their motion for summary judgment:

The undisputed evidence in this case indicates that T.A. Harrell, Jr., made adequate provisions for the payments of the debts of Harrell Petroleum Company as follows:

1. The assets and liabilities of Harrell Petroleum Company were assumed by T.A. Harrell, Jr., and those obligations were paid through his death.

The Huffs contend that this is a judicial admission that at the time of dissolution, Harrell, and subsequently his Estate, assumed Harrell Petroleum's obligations.

Appellees argue that the Huffs waived any reliance on this admission because they did not object to the admission of controverting evidence or to the submission of an issue bearing on the facts admitted. We will first address appellees' assertion of waiver.

Assertions of fact in the live pleadings of a party, not pleaded in the alternative, are regarded as formal judicial admissions. *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983); *Vela v. City of McAllen,* 894 S.W.2d 836, 839 (Tex.App.—Corpus Christi 1995, no writ). A party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted. *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989).

The Huffs claim that the language at issue is an admission that at the time of dissolution, Harrell assumed the liabilities of Harrell Petroleum. Appellees argue that controverting evidence was introduced and that an issue on admitted facts was submitted to the jury.

After reviewing the record, we find that the evidence and issue cited by appellees relates to Harrell's alleged oral guarantee and not to his liability resulting from the dissolution. The record reflects no evidence contradicting Harrell's liability after dissolution, and we find that no issue bearing on the admission was submitted to the jury. We conclude that appellees' argument that controverting evidence was introduced and that an issue on admitted facts was submitted to the jury is without merit. We hold that the Huffs did not waive their reliance on the judicial admission.

Nevertheless, we conclude that the Huffs were not entitled to judgment based on the admission. When a corporation dissolves, its assets are to be applied, so far as they will go, in satisfaction of debts, obligations, and liabilities existing at the time of dissolution, or the corporation must make adequate provision for such satisfaction. TEX. BUS. CORP. ACT ANN. art. 6.04(A)(3) (Vernon Supp.1996). Corporate creditors have priority in the assets over shareholders. *Id.; Henry I. Siegel Co., Inc. v. Holliday,* 663 S.W.2d 824, 827 (Tex.1984). If a preferential transfer of corporate assets is made, a creditor may pursue the assets and subject the assets to payment of their claims. *Id.* As long as the assets are traceable and retain their dissolution value, corporate directors will not be personally liable to the creditor. *Id.* at 828.

In the instant case, Harrell Petroleum distributed its assets to Harrell, and appellees have admitted that this distribution was to facilitate the adequate provision for satisfaction of corporate obligations existing at the time of the dissolution. This admission, which substantially tracks the language of article 6.04(A)(3), does not extend liability beyond that imposed by the article. In other words, Harrell was required to apply the assets to creditor claims so far as the assets would cover.

The jury found that Harrell Petroleum breached the Ingleside lease, and there appears to be no question that the lease was in existence at the time of the dissolution. In

addition, the jury found that the Huffs sustained damage from the breach. Harrell, or his Estate, would therefore have to satisfy the breached lease with corporate assets to the extent they were available. *See Dallas Joint Stock Land Bank of Dallas v. Forsyth*, 130 Tex. 563, 109 S.W.2d 1046, 1050 (1937) (estate is liable for decedent's debts); *Lesikar v. Rappeport*, 809 S.W.2d 246, 251 (Tex. App.—Texarkana 1991, no writ).

The jury found that the net value of Harrell Petroleum at the time of dissolution was $505,080.00 and that since the dissolution, Harrell, or his Estate, had paid $741,847.00 for debts owed by Harrell Petroleum. The evidence supports these findings. Because payouts on behalf of Harrell Petroleum exceed the value of the assets at dissolution, appellees cannot be personally liable to the Huffs for the breach unless the distributions were untraceable, or the dissolution value of the assets was diminished by Harrell.

The record shows that appellees traced the asset distributions and that no claims were made about the diminished value of the assets. We hold that the judicial admission did not entitle the Huffs to judgment, and the trial court did not err by refusing to enter a judgment on the verdict based on these grounds. Accordingly, we overrule appellants' first point of error.

By their sixth point of error, the Huffs contend that the trial court erred in rendering a take-nothing judgment based on waiver of appellees' judicial admission. As we held above, the Huffs did not waive their right to rely on the judicial admission, but the admission did not entitle them to a judgment. We overrule appellants' sixth point of error.

### Relevant Jury Question

■ By their seventh point of error, the Huffs contend that the trial court erred in asking the jury to determine the amount of money paid out by Harrell or his Estate on behalf of Harrell Petroleum after the dissolution. In light of our previous discussion, we conclude that such a jury finding was relevant to the Huffs' theory of recovery based on the judicial admission. Such a finding was also relevant under an alternate theory of imposing liability as pleaded by the Huffs,

*i.e.,* denuding the corporation of its assets. *See World Broadcasting Sys., Inc. v. Bass*, 160 Tex. 261, 328 S.W.2d 863, 866 (1959)(holding that corporate director was liable to creditors to extent of assets taken); *Inesco, Inc. v. Sears*, 567 S.W.2d 827, 830 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 632 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ). Moreover, the jury finding was relevant to appellees' defense that Harrell, or his Estate, had paid Harrell Petroleum liabilities in excess of the assets available at dissolution. We overrule appellants' seventh point of error.

### Piercing the Corporate Veil

■ By their second point of error, the Huffs contend that the trial court erred in entering a take-nothing judgment against them because the jury findings as a matter of law show fraud sufficient to pierce the corporate veil under article 2.21 of the Texas Business Corporation Act. The jury found that Harrell and Harrell Petroleum were alter egos, that the corporate form of Harrell Petroleum had been used as an unfair device to evade existing legal obligations, and that Harrell denuded Harrell Petroleum of its assets thereby leaving it unable to satisfy its obligations. The Huffs claim that the combination of these findings is sufficient to satisfy the requirements of article 2.21(A) or (B).

Article 2.21 states, in relevant part, as follows:

**Art. 2.21. Liability of Subscribers and Shareholders**

A. A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted shall be under no obligation to the corporation or to its obligees with respect to:

\* \* \* \* \* \* \*

(2) Any contractual obligation of the corporation on the basis that the holder, owner, or subscriber is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates

that the holder, owner, or subscriber caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, or subscriber[.]

\* \* \* \* \* \* \*

B. The liability of a holder, owner, or subscriber of shares of a corporation for an obligation that is limited by Section A of this article is exclusive and preempts any other liability imposed on a holder, owner, or subscriber of shares of a corporation for that obligation under common law or otherwise, except that nothing contained in this article shall limit the obligation of a holder, owner, or subscriber to an obligee of the corporation when:

(1) the holder, owner, or subscriber has expressly assumed, guaranteed, or agreed to be personally liable to the obligee for the obligation[.]

TEX. BUS. CORP. ACT ANN. art. 2.21(A), (B) (Vernon Supp.1996).

Alter ego and unfair device are alternative bases for disregarding the corporate identity in order to impose personal liability on an individual. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986). The Huffs contend that jury questions on alter ego and unfair device comprise a broad form submission of the issue of fraud, and that jury findings of alter ego and unfair device support a judgment under article 2.21(A). However, without a showing of actual fraud for Harrell's personal benefit, the jury findings on alter ego and unfair device are insufficient to impose personal liability on Harrell or his Estate. *See* art. 2.21(A)(2).

■ The jury charge contained no questions or instructions encompassing fraud. In addition, the charge did not instruct the jury on the elements of article 2.21 which include demonstrating actual fraud for Harrell's personal benefit. Appellees objected to this omission and moved for judgment on the verdict on the basis that a fraud finding was essential to a judgment for the Huffs. Although the trial court overruled appellees' objection, it did grant their motion and render a take-nothing judgment against the Huffs.

The Huffs did not request a question on fraud. In fact, the Huffs' motions for judgment on the verdict, reformation of the judgment, and new trial did not address the issue of fraud. We conclude that the Huffs waived the right to complain of the judgment unless they can show that a jury finding on fraud was unnecessary. *See Wyndham Hotel Co. v. Self,* 893 S.W.2d 630, 635–36 (Tex.App.—Corpus Christi 1994, writ denied); *Gilgon, Inc. v. Hart,* 893 S.W.2d 562, 567–69 (Tex. App.—Corpus Christi 1994, writ denied).

■ The trial court need not submit a question to the jury if the evidence conclusively established the issue as a matter of law. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 222–23 (Tex.1992); *Wyndham Hotel Co.,* 893 S.W.2d at 635–36; *Gilgon, Inc.,* 893 S.W.2d at 567–69. The test for determining if evidence is conclusive is similar to the test for no evidence. *National Farmers Union Prop. & Casualty Co. v. Degollado,* 844 S.W.2d 892, 895 (Tex.App.—Austin 1992, writ denied). If there is some evidence to support the judgment, the Huffs did not conclusively prove the element of fraud. *See id.*

■ To conclusively prove fraud, the evidence must show 1) that a material representation was made, 2) that it was false, 3) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion, 4) that he made it with the intention that it be acted upon by the other party, 5) that the other party acted in reliance upon it, and (6) that the other party suffered damages. *T.O. Stanley Boot Co.,* 847 S.W.2d at 222.

According to the Huffs, "Mr. Harrell materially misrepresented that Harrell Petroleum would be around to guarantee the lease, which was false, and was made when T.A. Harrell knew he would be distributing the assets out of the corporation, thereby knowing it was false[,] or with reckless disregard for its truth or falsity." The evidence shows, however, that Harrell Petroleum continued to function for approximately one and one-

half years after it sold the convenience store operation and assigned the lease to J's. We find no evidence in the record that at the time the Huffs consented to the assignment of the lease, Harrell already had plans to dissolve Harrell Petroleum. Harrell Petroleum covered its obligations up to the time of dissolution. Although Harrell Petroleum was dissolved without notice and its assets were distributed to Harrell, the known debts at the time of dissolution were paid by Harrell and they were in excess of the value of assets he received. One of the debts Harrell continued to pay was a large promissory note owed to the Huffs. At the time of dissolution, the Huffs had not declared that J's was in default on the assigned lease. If this evidence does not conclusively establish the absence of fraud, it does at least raise a fact issue on the matter.

The Huffs also contend that the finding of alter ego is sufficient to trigger Harrell's personal liability for the breached lease under article 2.21(B)(1). The Huffs' theory appears to be that because Harrell was found to be the alter ego of Harrell Petroleum, he is personally liable for any guarantee made by Harrell Petroleum on the lease assignment. We find this contention to be without merit. To read the jury verdict in this manner would render article 2.21(A)(2) meaningless. Such a reading would obviate the need for demonstrating actual fraud. Harrell Petroleum remained liable because it signed the original lease, not because it guaranteed the assignment.

Under article 2.21(B)(1), the Huffs had to prove that Harrell himself expressly guaranteed his willingness to be personally liable for any default on the lease assignment. The jury found that Harrell did not orally guarantee to be primarily responsible for the assignment. No question was submitted to the jury concerning the existence of an oral guarantee. We conclude that the Huffs again waived the right to complain of the judgment unless the evidence conclusively proved that Harrell orally gave his personal guarantee.

A review of the record does not favor the Huffs. The record shows that all prior oral agreements between the Huffs and Harrell were reduced to writing. These writings included Harrell's personal guarantee on a promissory note owed to the Huffs. Harrell never told any Harrell Petroleum shareholders, officers, or employees that he had orally guaranteed the assignment. More importantly, when the Huffs were attempting to get satisfaction on the default from Harrell prior to his death, no mention was made in the correspondence about an oral guarantee. It appears that the Huffs did not mention the existence of an oral guarantee until after Harrell died and possibly until after the lawsuit was filed.

We find this to be some evidence that an oral guarantee did not exist. Because the Huffs did not conclusively establish that Harrell gave an oral personal guarantee on the assignment, the Huffs needed a jury finding on the issue to impose liability under article 2.21(B)(1). Without a jury finding of actual fraud or of Harrell's personal guarantee, we hold that the jury findings do not mandate a judgment for the Huffs under article 2.21. We overrule appellants' second point of error.

### Evidentiary Matters

By their twelfth point of error, the Huffs complain that the trial court erred in allowing into evidence their superseded pleadings. The Huffs contend that there was no basis for admitting these pleadings into evidence.

Appellees offered the Huffs' Original Petition, First Amended Petition, and Second Amended Petition as evidence that the Huffs did not claim the existence of an oral guarantee until they filed their Third Amended Petition. Appellees argued that the Huffs' pleadings were prior inconsistent statements which could be used to impeach the credibility of Mr. Huff's testimony concerning the existence of the oral guarantee. The Huffs objected because the pleadings were superseded and contained no statements which could be considered admissions.

The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied). To obtain a reversal based upon

error of the trial court in evidentiary matters, an appellant must show that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP. P. 81(b)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 397 (Tex.1989). If the evidence in question is cumulative, the error is generally not reversible. *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); *Gee*, 765 S.W.2d at 397.

 Statements in a superseded pleading cannot be considered judicial admissions and must be introduced into evidence as any other admission before it can be considered as evidence. *Drake Ins. Co. v. King*, 606 S.W.2d 812, 817 (Tex.1980); *Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726, 729 (1941). Admissions are statements made or acts done by an opposing party, or on his behalf, which amount to a prior acknowledgment by such party that one of the facts relevant to the issues is not as he now claims. *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 337 (Tex.1963); *McInnes v. Yamaha Motor Corp., U.S.A.*, 659 S.W.2d 704, 711–12 (Tex.App.—Corpus Christi 1983), *aff'd*, 673 S.W.2d 185 (Tex. 1984). An admission against interest in an abandoned pleading may be used as evidence against the pleader, but it is not conclusive. *Industrial Broadcasting Co. v. Broadcasting Equip. Sales Co.*, 543 S.W.2d 674, 677 (Tex. Civ.App.—Eastland 1976, writ ref'd n.r.e.). Like any other utterance or statement, if the abandoned pleading is inconsistent with the party's present position at trial, then the abandoned pleading is admissible and receivable into evidence as an admission, and this rule is recognized even though the superseded pleading is not verified and bears no filemark. *Westchester Fire Ins. Co. v. Lowe*, 888 S.W.2d 243, 252 (Tex.App.—Beaumont 1994, no writ). A party may be impeached by showing statements made by him which are contradictory or inconsistent with his testimony given in the pending case. *Id.* In order for a petition to qualify as an admission, it must contain some statement relevant to a material issue in the case and inconsistent with the position taken by the party against whom it is introduced. *McCardell*, 369 S.W.2d at 337.

 To be considered an admission or inconsistent statement, there must be a statement. The pleadings at issue contain no statements regarding an oral guarantee that contradict any part of Mr. Huff's testimony. In addition, no other witness claimed that the Huffs mentioned the oral guarantee prior to filing the lawsuit. The mere failure to allege a particular fact in an abandoned pleading has no probative force in establishing whether such fact does or does not exist. *Hall v. Williams & Ellis*, 267 S.W. 520, 522 (Tex.Civ. App.—Waco 1924, no writ). Because the absence of the allegation of an oral guarantee in the superseded pleadings is not a statement admitting that Harrell did not give an oral guarantee to the Huffs, we conclude that the trial court erred in admitting the pleadings into evidence.

 We must next consider whether the error was harmful. *See* TEX.R.APP. P. 81(b)(1). The Huffs explained that the allegation regarding an oral guarantee was added to their pleadings when they realized that the Statute of Frauds did not apply to their case. In addition, the Huffs' failure to rely on the oral guarantee until the lawsuit was filed is established by other evidence. Testimony from persons involved in the lease assignment and demand letters after the default show that neither the Huffs nor Harrell mentioned the alleged oral guarantee while Harrell was alive. We hold that the error in admitting the pleadings into evidence was harmless. We overrule appellants' twelfth point of error.

 By their thirteenth point of error, the Huffs contend that the trial court erred in admitting into evidence appellees' entire motion for summary judgment. The Huffs relied on statements contained in the motion as judicial admissions of appellees' liability for the breached lease. The Huffs argue that the trial court should have limited the evidence from the motion to that portion containing the judicial admissions. Appellees respond that they offered the entire motion for summary judgment under the rule of optional completeness.

A review of case law provided no assistance in resolving this issue. However, even

if we were to hold that the trial court erred in admitting the entire motion for summary judgment into evidence, we would have to hold that the error was harmless. The Huffs argue that the motion for summary judgment introduced the defense of limitations. Although the summary judgment motion does refer to the statute of limitations set out in the Texas Business Corporation Act, the jury was not instructed on limitations and was not asked to determine whether limitations had run.

The Huffs also complain of harm from an allegation in the motion that Kapadia's financial statement indicated he was able to pay any debts. We find this complaint to be without merit as similar evidence was presented through other sources. We overrule appellants' thirteenth point of error.

■ By their fourteenth point of error, the Huffs contend that the trial court erred in admitting into evidence, without authentication, a schedule of Harrell Petroleum's assets and liabilities at the time of dissolution. The schedule, which was prepared by Mr. Womack and was an exhibit produced for his deposition, was admitted during the expert testimony of accountant, William Skrobarczyk.

In preparing his opinion, Skrobarczyk reviewed Womack's deposition and the schedule. Skrobarczyk could not verify the genuineness of the schedule, and Womack's deposition was not introduced into evidence. The Huffs objected to this evidence because it was not authenticated. Although the Huffs agree that Skrobarczyk, as an expert witness, could formulate and offer an opinion based on the facts and data in the schedule, they claim that the schedule itself was not admissible because it was not properly authenticated. Appellees argue that the schedule is admissible under Rule 703 of the Texas Rules of Civil Evidence.

■ Rule 703 provides as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Tex.R. Civ. Evid. 703. The rule does not, as appellees claim, pertain to the admissibility of the facts and data relied on by an expert in forming an opinion. Instead, Rule 703 allows the expert to offer an opinion formed after reviewing these facts and data, whether that information would be admissible or not.

■ · We hold that the schedule at issue was inadmissible because it was not properly authenticated. However, the trial court's error in admitting the schedule was harmless. The information provided by the schedule was cumulative of Skrobarczyk's prior testimony. In addition, Skrobarczyk opined, based on the data contained in the schedule, that Harrell Petroleum assets at the time of dissolution were $105,080, but the jury found the value to be $505,080. We cannot say that admitting the schedule into evidence led to an improper judgment. We overrule appellants' fourteenth point of error.

■ By their fifteenth point of error, the Huffs contend that the trial court erred in allowing appellees to elicit the live testimony of Alex Harris.

The Huffs called Harris as a deposition witness only. Appellees did not designate Harris as a witness but called him in their case-in-chief. After Harris had testified for some time, the Huffs objected to his testimony on the basis that he was an undesignated witness and asked that all of Harris's testimony up to that point be stricken. The trial court initially sustained the objection but refused to strike Harris's testimony. After appellees argued that Harris had been designated by the Huffs to testify by deposition, the trial court reversed its ruling and allowed appellees to continue questioning Harris. The trial court stated that the Huffs' designation of Harris as a witness entitled appellees to examine him.

A party may request the names of the witnesses having knowledge of relevant facts. Tex.R. Civ. P. 166b(2)(d). When a party fails to respond to such a request, the testimony of undesignated witnesses will be excluded

unless the trial court finds that good cause requires the admission of the evidence. Tex.R. Civ. P. 215(5). The determination of good cause is within the discretion of the trial court. *Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 3 (Tex.1994). The supreme court has declined to decide whether sufficient good cause can exist based solely on an opposing party's designation. *Id.* at 4. Based on the facts in this case, we decline as well.

We conclude that the trial court's error, if any, in admitting Harris's testimony was harmless. The bulk of Harris's testimony was elicited before the Huffs objected. Thus, the Huffs' complaint concerning that portion of the testimony offered prior to the objection was not preserved for appellate review.

After the objection was overruled, Harris testified only about the transaction between Harrell Petroleum and Kapadia in 1985. He opined that Harrell Petroleum would not have proceeded with the transaction if Kapadia were not a good financial risk. Although the Huffs contend that this testimony was central to their theory of recovery, we find that Harris's testimony is cumulative of other evidence in the record.

Kapadia testified that as part of the transaction with Harrell Petroleum, he signed a note for approximately one million dollars. He was not aware of any questions that were raised at that time concerning his financial condition. Kapadia also testified that he had used similar financial information to enter into transactions with Jitney Jungle, another company involved in the operation of convenience stores.

Mr. Huff testified that he had been involved in transactions with Jitney Jungle. Although he claimed to be amazed that Jitney Jungle would rely on Kapadia's financial statement, Huff believed the people associated with that company would not take unnecessary risks. Huff also testified that Harrell was a competent and reasonable businessman.

We hold that Harris's testimony was cumulative of this evidence. Accordingly, we overrule appellants' fifteenth point of error.

Having overruled the Huffs' first and second points of error, we hold that the Huffs have failed to impose liability on appellees. Therefore, we need not address the Huffs' third point of error concerning damages and their fourth, fifth, eighth, ninth, tenth, and eleventh points of error relating to appellees' defensive theories. Tex.R.App. P. 90(a). We also need not address appellees' cross-point because it is not necessary to the disposition of this case. *Id.*

We AFFIRM the trial court's judgment.