In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00154-CV
______________________________


MICHAEL F. LOY, FLEETWOOD ENTERPRISES, INC., AND FLEETWOOD
RETAIL CORPORATION, F/K/A HOMEUSA, INC., Appellants
 
V.
 
STEVEN HARTER, NOTRE CAPITAL VENTURES, II, L.L.C., AND NOTRE
CAPITAL VENTURES, III, L.L.C., Appellees




On Appeal from the 127th Judicial District Court
Harris County, Texas
Trial Court No. 00-22192






Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            The merger hung in the balance when Michael F. Loy, then the Chief Financial Officer
(C.F.O.) and a director and stockholder of HomeUSA, Inc. (HomeUSA), and Steven Harter, then a
director and stockholder of that company, faced each other in the hallway during a break in
negotiations concerning a proposed merger


 of HomeUSA into Fleetwood Enterprises, Inc.
(Fleetwood). The content of their discussion in that hallway is the subject of conflicting evidence,
primarily concerning whether there was any agreement then made between the two men, but all
parties agree the Loy-Harter meeting was followed by the successful completion of the merger. That
fateful discussion, however, spawned the multi-party litigation from which these appeals by Loy and
Fleetwood arise.
            After the merger, Fleetwood, the surviving corporation, reassigned Loy. Loy claimed he had
been constructively terminated and sued Fleetwood. That action was arbitrated, and Loy was
awarded money, which he accepted in exchange for his release of Fleetwood.
            Loy then sued Harter and Harter's companies, Notre Capital Ventures, II, L.L.C., and Notre
Capital Ventures, III, L.L.C. (the two companies herein collectively called "Notre Capital"), claiming
that, to pave the way for the merger, Harter induced Loy to waive an important provision in his
personal employment contract with HomeUSA


 by promising to provide Loy with part of three new
public offerings (herein IPOs). Loy admitted in his pleadings that he received from Harter an interest
in one IPO and that he made $124,850.00 on it, but claimed Harter had promised him interests in
three IPOs. Harter agrees a hallway discussion occurred, but insists he made Loy no such promise. 
On all evidence disputed between Loy and Harter, the trial court, acting as fact-finder, believed
Harter, not Loy.


 The trial court thus ordered that Loy take nothing. Harter, as former director of
HomeUSA (now Fleetwood), also claimed that, under an indemnity contract between Harter and
HomeUSA, as well as under HomeUSA's bylaws and under Texas' common law, Fleetwood, as
HomeUSA's successor, must indemnify him for defense expenses—attorney's fees of about
$200,000.00—incurred defending himself in the Loy lawsuit. The trial court agreed.
            Fleetwood was not a party to Loy's lawsuit. Fleetwood, however, filed its own lawsuit
against Loy based on Loy's original petition against Harter, in which Loy, in the course of alleging
Harter had promised him interests in three IPOs, admitted receiving the interest in one IPO from
Harter. In a partial summary judgment rendered in Fleetwood's suit against Loy, Loy was ordered
to pay Fleetwood the money he admitted making off the one Harter IPO, based on the premise that,
in making the deal, Loy breached his duties to Fleetwood's predecessor, HomeUSA.
            Loy appeals, contending (A) Fleetwood's suit against him must go to arbitration as required
by the arbitration clause in his employment contract; (B) res judicata bars Fleetwood's claim against
him; (C) Fleetwood's summary judgment evidence did not prove any breach of fiduciary duty by
Loy; (D) the summary judgment finding irreconcilably conflicts with the trial court's findings from
the Fleetwood/Harter trial; and (E) Loy was denied due process in that trial.
            Fleetwood appeals, contending the indemnity provision does not cover Harter's actions or the
costs of defending Loy's claims.
            Harter won on all counts and has not appealed.
I. Loy's Appeal
            A. Arbitration
            We first address Loy's contention that Fleetwood's claims against him were subject to
mandatory arbitration under the terms of his employment contract and therefore should not have
been addressed by the trial court. In this case, Fleetwood sought reimbursement for Loy's alleged
breach of fiduciary duty to the company. The trial court denied Loy's motion asking that Fleetwood's
lawsuit be arbitrated.
            Arbitration of disputes is strongly favored. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 90
(Tex. 1996); Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). In determining
whether the claims fall within the scope of an arbitration agreement, a court must focus on the factual
allegations of the complaint, rather than on the legal causes of action asserted. Marshall, 909
S.W.2d at 900. The burden is on the party opposing arbitration to show that their claims fall outside
the scope of the arbitration agreement. Id. Once an agreement to arbitrate has been shown to exist,
a matter not in dispute here, the party resisting arbitration bears the burden of proving that the matter
in dispute is not within the scope of the arbitration agreement. Id. The policy favoring arbitration
is so strong that courts should not deny arbitration "unless it can be said with positive assurance that
an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." 
Id. at 899.
            In this case, the employment contract reads, in pertinent part, as follows:
Arbitration. . . . [A]ny unresolved dispute or controversy arising under or in
connection with this Agreement shall be settled exclusively by arbitration, . . .
provided that Employee shall comply with Employer's grievance procedures in an
effort to resolve such dispute or controversy before resorting to arbitration . . . . The
arbitrators shall not have the authority to add to, detract from, or modify any
provision hereof nor to award punitive damages to any injured party. The arbitrators
shall have the authority to order back pay, severance compensation, vesting of
options (or cash compensation in lieu of vesting of options), reimbursement of costs,
including those incurred to enforce this Agreement, and interest thereon in the event
the arbitrators determine that Employee was terminated without disability or good
cause  .  .  .  or  that  Employer  has  breached  this  Agreement  in  any  material 
respect . . . .

(Emphasis added.)
            Loy contends that Fleetwood's allegations all necessarily "aris[e] under or in connection with"
his employment agreement, because they are based on Fleetwood's position that he waived a clause
of his employment contract because he was paid to do so. Fleetwood argues that its claim is based
solely on breach of a fiduciary duty that existed independently of the employment contract; thus, the
contract is not involved.
            The precise duty Loy was alleged and found to have breached is important to a proper
analysis of the scope of the arbitration provision. Unfortunately, precision on that point is lacking
in the record. Only Loy's vote as a director of HomeUSA, in favor of approving the merger, or his
lack of notice to HomeUSA of his alleged agreement with Harter—not his waiver of the change of
control provision, which he had been personally given in his employment contract—could provide
the breach of fiduciary duty, if any, to HomeUSA (now Fleetwood), as found by the trial court. The
question before us, then, is whether Fleetwood's claim against Loy for "selling" his vote as a director
or for failing to give the company notice, as a director, is something that "aris[es] under or in
connection with" Loy's employment agreement.
            In the face of an arbitration clause, the arbitration of tort claims should be evaluated under
the following standard set out by Fridl v. Cook, 908 S.W.2d 507 (Tex. App.—El Paso 1995, writ
dism'd w.o.j.):
[W]hether the particular tort claim is so interwoven with the contract that it could not
stand alone or, on the other hand, is a tort completely independent of the contract and
could be maintained without reference to the contract. Valero Energy Corp. v.
Wagner & Brown, 777 S.W.2d 564, 566 (Tex. App.—El Paso 1989, writ denied).

Id. at 511. If the arbitration clause is broad, arbitration of a tort claim will be ordered unless "it can
be said with positive assurance that the particular dispute is not covered." Dallas Cardiology
Assocs., P.A. v. Mallick, 978 S.W.2d 209, 214 (Tex. App.—Texarkana 1998, pet. denied) (citing
Kline v. O'Quinn, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist.] 1994, writ denied)).
            There is indisputably "a strong policy preference for enforcing arbitration clauses." Capital
Income Properties-LXXX v. Blackmon; 843 S.W.2d 22, 23 (Tex. 1992). In Blackmon, the Texas
Supreme Court granted arbitration of a set of investor tort claims against their limited partnership
for actions of the partnership in its operation, including fraud, breach of fiduciary duty, negligent
misrepresentation, and deceptive trade practices, because those tort claims "ar[ose] out of or in
connection with or relating to" the limited partnership agreement and thus fell within the scope of
the arbitration clause. Id. Note the apparent absence of any other relationship—and, of course, the
absence of a dispute or cause of action arising out of that different relationship—between the parties
outside of the agreement containing the arbitration clause.
            In a case decided by this Court applying the Fridl test, identical arbitration provisions in two
physicians' employment contracts with a professional association—to arbitrate disputes "arising over
the terms and conditions of this Agreement or in any manner relating to this Agreement"—were held
to require arbitration of related tort claims (the professional association's alleged defamation of the
physicians relative to their practice and its interference with the physicians' patient relationships)
since it could not be said with positive assurance that those claims were not covered by the
arbitration provision. Mallick, 978 S.W.2d 209. In Mallick, the employment agreements established
and governed the sole relevant relationship of the doctors with the professional association, so the
claims which touched on the relationship between employer and employee necessarily related to the
employment agreement.
            Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576 (Tex. App.—Houston [14th Dist.]
1999, no pet.), involved a natural gas pipeline operating agreement which called for arbitration of
any dispute on "any matter within the scope of the Operating Agreement." Id. at 581. In the face
of claims for breach of fiduciary duty, fraud, tortious interference, and professional malpractice, and
an assertion that there was a separate, undocumented partnership between the parties out of which
the dispute arose, the Fourteenth Court of Appeals held that, since there was no evidence of any
relationship between the parties outside the joint venture contemplated by the operating agreement,
arbitration was required.
            On the other hand, Perlstein v. D. Steller 3, Ltd., 109 S.W.3d 36 (Tex. App.—Corpus Christi
2003,  pet.  filed),  involved  three  agreements,  (1)  a  letter  of  intent  to  purchase,  which  resulted
in (2) a purchase agreement, and (3) a post-purchase limited partnership agreement. The limited
partnership agreement called for arbitration of any dispute "directly or indirectly concerning this
Agreement or the breach hereof or the subject matter hereof." Id. at 38. The dispute was about
whether one party fraudulently induced the other to enter into the purchase agreement. Rejecting the
argument that the agreements were merged, the court of appeals denied arbitration, holding the
dispute outside the scope of the arbitration clause.
            In cases ordering arbitration of tort claims, the claims either related directly to the agreement
itself 


 or arose from the legal relationship governed by the agreement containing the arbitration
clause.


 Here, Loy's employment agreement governed his role as an employee, C.F.O. of HomeUSA,
and did not touch his role as a director of the corporation. Couched in terms of the Fridl test,
Fleetwood's claim that, by selling his vote as a director or by failing as a director to disclose his
alleged agreement with Harter, Loy breached his fiduciary duty, (1) can stand alone, (2) is a tort
completely independent of the employment relationship that then existed between Loy and
HomeUSA, and (3) could be maintained without reference to the employment agreement. See
Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983) ("arising
hereunder" covers disputes relating to the interpretation and performance of the contract itself, not
unrelated torts).
            For that reason, notwithstanding the policy and presumptions strongly favoring arbitration,
we conclude with positive assurance that Fleetwood's tort claim against Loy for breach of fiduciary
duty as a director was not covered by the arbitration provision in Loy's employment agreement. 
Therefore, the trial court was correct in denying arbitration. We affirm the partial summary
judgment denying arbitration.
            B. Res Judicata
            Loy next contends that, since Fleetwood did not prosecute its tort claim against Loy in the
prior arbitration of Loy's severance claim against Fleetwood, Fleetwood's claim is now barred by res
judicata. We disagree.
            Res judicata precludes the relitigation of claims that have been finally adjudicated in a prior
action, as well as claims that pertain to the same subject matter and could have been, but were not,
litigated. Amstadt v. United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996); Freeman v.
Cherokee Water Co., 11 S.W.3d 480, 483 (Tex. App.—Texarkana 2000, pet. denied). In Barr v.
Resolution Trust Corp., 837 S.W.2d 627, 631 (Tex. 1992), the Texas Supreme Court held in
pertinent part: 
The scope of res judicata is not limited to matters actually litigated; the judgment in
the first suit precludes a second action by the parties and their privies not only on
matters actually litigated, but also on causes of action or defenses which arise out of
the same subject matter and which might have been litigated in the first suit.

Id. at 630 (emphasis added) (citing Tex. Water Rights Comm'n v. Crow Iron Works, 582 S.W.2d 768,
771-72 (Tex. 1979)). Further, the court held that a determination of what constitutes the same
subject matter requires a factual analysis of the previous lawsuit, and any cause of action which
arises out of the same set of facts should have been litigated. Id.
            In Loy's employment contract, there were two severance clauses. One dealt with ordinary
termination of his employment, the other with termination resulting from any change in control of
the company. Under the latter clause, if Loy was relieved of duties after a change in ownership, he
would be entitled to considerably more than if the company merely chose to end his employment. 
In the arbitration over the effect of Loy's contract, the issue was the amount of severance he was due. 
The controlling question was whether Loy had effectively waived the "change of control" clause of
his employment contract and was due only the lesser amount under the straight termination clause. 
The arbitration panel decided Loy was due only the lesser termination amount because he had
effectively waived the change of control clause.



            Fleetwood's current claim is breach of fiduciary duty by Loy in casting his vote as a director
in exchange for personal gain. The subject matter of the prior arbitration is not the same as that of
the current claim. Therefore, the current claim is not barred by res judicata. We overrule Loy's
contention.
            C. Breach of Fiduciary Duty
            Loy next contends the summary judgment evidence does not support the trial court's
judgment that, as a matter of law, he breached fiduciary duties he owed the corporation. We agree.
            The trial court stated in the summary judgment that, by his conduct, Loy had breached his
fiduciary duties and received stock valued at $124,850.00 as proceeds from the breach. In his
original brief, Loy argued that the two acts—agreeing to waive the employment provision in his
employment contract pursuant to an agreement with Harter and not disclosing the agreement to the
board—could not constitute a breach of fiduciary duty as a matter of law. Fleetwood asserts that Loy
sold his vote for the merger in return for stock and that such act is a breach of a fiduciary duty. Loy
argues that he did not sell his vote, but agreed, in a side deal with Harter, to give up reimbursement
rights he unquestionably had in his own right under his employment contract with HomeUSA,
Fleetwood's predecessor. Fleetwood convinced the trial court the evidence showed that Loy
breached a fiduciary duty as a matter of law and that Fleetwood was entitled to the amount Loy
obtained through the side deal.
            This appeal is taken from a summary judgment. When reviewing a traditional motion for
summary judgment, this Court must adhere to the following standards: (1) the movant has the
burden of showing there is no genuine issue of material fact and the movant is entitled to judgment
as a matter of law; (2) in deciding whether there is a disputed issue of material fact precluding
summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every
reasonable inference must be indulged in favor of the nonmovant. Limestone Prods. Distribution,
Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002).
            The sole summary judgment evidence presented by Fleetwood consists of Loy's original
petition. That petition had been superseded by a first amended petition some three months before
Fleetwood filed its motion for summary judgment. Thus, Fleetwood's evidence consisted of a
pleading that was no longer live.
            This situation creates a major stumbling block for Fleetwood's summary judgment efforts. 
An admission against interest in an abandoned pleading may be used in evidence, but it is not
conclusive. Long v. Knox, 155 Tex. 581, 291 S.W.2d 292, 294 (1956); Huff v. Harrell, 941 S.W.2d
230, 239 (Tex. App.—Corpus Christi 1996, pet. denied). When a pleading has been abandoned,
superseded, or amended, it ceases to be a "live" pleading and no longer provides a judicial admission. 
Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726, 729 (1941); Huff, 941 S.W.2d at 239. The discarded
pleading is still a statement that can be introduced in evidence as an admission, but it is not
conclusive. Kirk, 152 S.W.2d at 729; Huff, 941 S.W.2d at 239.
            Because Loy timely filed his first amended original petition, it replaced his original petition
containing the specific language on which Fleetwood based its motion for summary judgment. 
Therefore, the superseded pleading cannot be considered as providing judicial admissions. Drake
Ins. Co. v. King, 606 S.W.2d 812, 817 (Tex. 1980). As a result, the facts forming the basis for the
defendants' motion no longer existed, and summary judgment was improper. Sosa v. Central Power
& Light, 909 S.W.2d 893, 895 (Tex. 1995).
            Even if the essential allegations of Loy's original petition—or even his first amended
petition—properly constituted judicial admissions proving those allegations as a matter of law, the
summary judgment for Fleetwood was still improper, since those facts proved no breach of fiduciary
duty by Loy.
            The Texas Supreme Court in Int'l Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567 (Tex.
1963), noted that corporate officers and directors owe a strict fiduciary obligation to their
corporation. Three broad duties stem from the fiduciary status of corporate officers and directors: 
namely, the duties of obedience, loyalty, and due care. Gearhart Indus., Inc. v. Smith Int'l, Inc., 741
F.2d 707, 719 (5th Cir.1984) (addressing Texas law); see Gen. Dynamics v. Torres, 915 S.W.2d 45,
49 (Tex. App.—El Paso 1995, writ denied). The duty of loyalty dictates that a corporate officer or
director must act in good faith and must not allow his or her personal interest to prevail over the
interest of the corporation. The duty of loyalty is described as requiring an extreme measure of
candor, unselfishness, and good faith on the part of the officer or director. Holloway, 368 S.W.2d
at 577.
            Whether an officer or director is "interested" with respect to a particular transaction is a
question of fact. Id.; Gearhart Indus., Inc., 741 F.2d at 719. An officer or director is considered
"interested" if he or she (1) makes a personal profit from a transaction by dealing with the
corporation or usurps a corporate opportunity, (2) buys or sells assets of a corporation, (3) transacts
business in his or her officer's or director's capacity with a second corporation of which he or she is
also an officer or director or is significantly financially associated, or (4) transacts corporate business
in his or her officer's or director's capacity with a family member. Id.; Landon v. S & H Mktg.
Group, Inc., 82 S.W.3d 666, 673 (Tex. App.—Eastland 2002, no pet.).
            A fiduciary to a corporation is under an obligation not to usurp corporate opportunities for
personal gain. Such transactions in which a corporate fiduciary derives personal profit are described
as being subject to the closest examination. Holloway, 368 S.W.2d at 577. To establish a breach
of fiduciary duty by usurping a corporate opportunity, the corporation must prove that an officer or
director misappropriated a business opportunity that properly belongs to the corporation. Id.; Icom
Sys.,  Inc.  v.  Davies,  990  S.W.2d  408,  410  (Tex.  App.—Texarkana  1999,  no  pet.);  Landon,
82 S.W.3d 666, 681 (Tex. App.—Eastland 2002, no pet.). There is, however, no indication that the
opportunity from which Loy says he benefited was in any way a corporate opportunity.
            A reality check reminds us that Fleetwood wanted the merger to go through. It got what it
wanted—the merger was completed. Regardless of whether the merger would have been blocked
had Loy declined to give up his contractual rights, that did not happen. Fleetwood was not harmed
by Loy's action, and Loy usurped no corporate opportunity of Fleetwood's.
            Neither version of Loy's petition shows that Loy sold his vote to Harter, nor that Loy's action
was necessarily wrong. In addition, though the trial court evidently concentrated on the paragraph
stating that Harter and Notre Capital did not inform Fleetwood of the agreement through May of
1998, this neither negates the possibility that Fleetwood was otherwise aware of the agreement, nor
suggests that any lack of notice was somehow harmful to the corporation.



            Loy's two petitions speak solely in terms of Loy's agreement to sign the waiver of his own
personal rights.


 They do not, in any form, speak to his vote on the merger proposition. Accordingly,
neither demonstrates a violation by Loy of any fiduciary duty owed to Fleetwood, and the trial court
erred by rendering a partial summary judgment based thereon.
            Because the evidence presented by Fleetwood by its very nature cannot be conclusive, and
because even if it were, it does not show breach of a fiduciary duty, we reverse the summary
judgment and remand for further proceedings.
            D. Conflict in Findings
            Loy also argues that, because the findings in the summary judgment are in conflict with the
findings in the final judgment, the findings in the final judgment must control. We agree.
            Loy specifically argues that statements in the summary judgment finding that he agreed to
accept (and did receive) compensation from Harter for signing a waiver and allowing the merger to
proceed, are in conflict with the later findings made after trial that "Harter did not agree to
compensate Loy in return for Loy's waiver of the change of ownership provision."
            When a court renders a summary judgment that only disposes of part of a case, it is by
definition a partial summary judgment. A partial summary judgment is not final, and does not
become final, until it is merged into the final judgment in the case. Webb v. Jorns, 488 S.W.2d 407,
408–09 (Tex. 1972) (unsevered, partial summary judgment order merged into trial court's final
judgment); see Anderson v. Long, No. 2-02-308-CV, 2003 WL 21806904, at * 2 (Tex. App.—Fort
Worth Aug. 7, 2003, no pet.). The partial summary judgment does not become final and appealable
unless a severance of that phase of the case is ordered by the trial court. City of Beaumont v.
Guillory, 751 S.W.2d 491 (Tex. 1988).
            As long as the order remains interlocutory, it is subject to change by the trial court. A trial
court has the inherent authority to change or modify any interlocutory order or judgment until its
plenary power expires. In re Naylor, No. 06-03-00128-CV, 2003 WL 22454894, at *2 (Tex.
App.—Texarkana Oct. 30, 2003, no pet.) (not designated for publication); Mendez v. San
Benito/Cameron County Drainage Dist. No. 3, 45 S.W.3d 746, 754 (Tex. App.—Corpus Christi
2001, pet. denied).
            The partial summary judgment recites that "Loy agreed to accept compensation from Harter
for signing a waiver and allowing the merger . . . to proceed." The final judgment recites that "Harter
did not agree to compensate Loy in return for Loy's waiver of the change of ownership provision." 
Can both of those be correct? On a theoretical basis, perhaps. Not, however, in the context of this
case.
            Loy certainly received compensation from Harter in the form of a free ride on the IPO
express. The only question is why that happened. In the summary judgment, the trial court found
Loy was paid in return for signing the waiver, which allowed the merger to proceed. In the final
judgment, the trial court found that Harter made no agreement to pay Loy in return for the waiver. 
The theory of this case was that Harter paid Loy to sign the waiver to thus satisfy a condition
precedent to the merger. Since the trial court found Harter did not agree to pay Loy in return for the
waiver, then—in light of the complete lack of proof that Harter paid Loy directly for a change of his
vote on the merger—the necessary conclusion is that Harter provided the IPO opportunity for some
other reason.
            By entering a final judgment with findings that differ from those made in an earlier
interlocutory summary judgment, the trial court did away with the inconsistent findings in the earlier
judgment. It is equivalent to a trial court entering a new judgment during its plenary power period
that is different from the earlier judgment. The findings made in the final judgment control.
            Accordingly, we sustain this contention of error by Loy.
            E. Due Process
            Loy further contends we should vacate findings of fact adverse to him entered at the end of
trial because he was not present during the trial, yet the trial court adjudicated his rights in his
absence. This argument is based on an alleged lack of due process. Due process requires only that
a party be given notice that is reasonably calculated under the circumstances to apprise an interested
party of the pendency of the action and afford the party the opportunity to present objections. 
Peralta v. Heights Med. Ctr., 485 U.S. 80, 84–85 (1988); Zuyus v. No'Mis Communications, Inc.,
930 S.W.2d 743, 747 (Tex. App.—Corpus Christi 1996, no pet.).
            In this case, there is no question that Loy and his attorney were aware of the trial between
Harter and Fleetwood. Counsel stated in his original brief and also in his brief on rehearing that
Loy's due process rights were violated because the trial court made fact-findings on such matters as
whether an agreement existed between Loy and Harter, in Loy's absence. But as noted above, due
process is provided when notice and opportunity are given. Loy obviously had notice, and thus the
opportunity to inject himself into the action. Because the summary judgment was interlocutory and
not severed from the main case, the trial court retained the authority to alter that judgment when it
was merged into the final judgment at the end of the trial. See Webb, 488 S.W.2d at 408–09 (Tex.
1972).
            Because Loy had notice and opportunity, we find no violation of due process.
II. Fleetwood's Appeal
            Fleetwood contends the trial court erred by ordering it to reimburse Harter for attorney's fees
he incurred defending against Loy's claims. Harter sought indemnity of defense expenses under an
explicit indemnity agreement he had with HomeUSA, as well as under HomeUSA's bylaws and
Texas' common law. The trial court concluded that Harter had not agreed to compensate Loy for
signing the waiver, that Harter acted on behalf of HomeUSA, and that this lawsuit by Loy was
against Harter in his capacity as a director. Therefore, HomeUSA/Fleetwood was required to pay
Harter's defense expenses.
            The indemnity agreement between Harter and HomeUSA provides, among other things, that
the company "shall indemnify" Harter for those expenses if he is sued "by reason of the fact that the
Indemnitee is or was a director, officer, employee or agent of the Company" so long as Harter "acted
in good faith and in a manner [Harter] reasonably believed to be in or not opposed to the best
interests of the Company . . . ." The trial court ruled that Fleetwood must indemnify Harter.



            Fleetwood asks this Court to find that the trial court should have made the indemnification
ruling based solely on the allegations of Loy's petition and that it erred by looking to all the
proceedings to decide that issue. Fleetwood argues we should determine whether Loy, in his suit,
sought to recover for any wrongful act taken by Harter in his capacity as a director. Alternatively,
Fleetwood argues we should at least "place primary emphasis" on Loy's complaint.
            This concept was addressed by the Houston Fourteenth Court of Appeals in Grove v. Daniel
Valve Co., 874 S.W.2d 150, 153, 155 (Tex. App.‒Houston [14th Dist.] 1994, writ denied). After
reviewing several cases applying Delaware law, the Houston court agreed that, although the
complaint provided a starting point for determining whether a director was entitled to indemnity, it
clearly should not be the only thing considered. The question is whether the necessary connection
between the corporate status and the allegations has been shown.



            In this case, Loy alleged that Harter, to obtain Loy's waiver as a precursor to approval of the
merger, had promised Loy that Harter and Notre Capital would, by giving Loy shares in Harter's next
three IPO deals, make him whole for what he would lose by signing the waiver. The evidence shows 
HomeUSA's attorney was present during the "hallway" discussion. The evidence shows that the
stockholders of HomeUSA would have lost substantial sums if the merger had not been approved,
which would have happened if the waiver had not been signed. There is evidence that Harter did not
make such a deal, but that he tried to convince Loy to waive the clause for the good of
HomeUSA/Fleetwood.
            Under this state of the record, there is sufficient evidence to support the trial court's findings. 
We, therefore, cannot conclude the trial court erred by finding that the lawsuit against Harter was
taken in connection with his position as director or agent of the company.
            Fleetwood attacks the trial court's finding that Harter did not promise Loy what Loy alleged,
arguing that such finding is without support in the evidence. Findings of fact entered in a case tried
to the court are of the same force and dignity as a jury's answers to jury questions. Anderson v. City
of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable
for legal and factual sufficiency of the evidence to support them by the same standards that are
applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a
jury question. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d
295, 297 (Tex. 1994).
            Fleetwood simply argues the trial court's finding is wrong, and there is evidence that a secret
arrangement of some kind existed about which it had not been informed. Based on that premise,
Fleetwood then argues that the secret agreement was necessarily between Harter and Loy, thus
neither HomeUSA nor Fleetwood was involved, and therefore, Fleetwood should not be liable under
the indemnity clause of the contract.
            In determining whether there is no evidence of probative force to support a jury's finding, we
are to consider only the evidence and inferences that tend to support the finding and disregard all
evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). Anything more than a scintilla of
evidence is legally sufficient to support the finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996). 
            When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must
consider and weigh all of the evidence, not just that evidence which supports the verdict. Mari.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998). A court of appeals can set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly
wrong and unjust. Id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
            Under both standards, there is evidence, which was obviously fully believed by the trial court,
that supports its findings. Fleetwood has not effectively attacked those findings. Accordingly,
Fleetwood's arguments that are based on acts involving any "agreement" by Harter to give Loy shares
in a later Harter IPO are irrelevant, because there are findings supported by the evidence that no such
agreement existed.
            Fleetwood's claim that Harter breached his fiduciary duties also fails, because the court
concluded the agreement did not exist. Further, even had the trial court concluded otherwise, it is
apparent from all versions of the evidence that HomeUSA's corporate counsel was in the hallway
when the conversation occurred; thus, the company was at least aware through its counsel of
whatever had happened between Loy and Harter.
            Fleetwood's main remaining contention is that, for various reasons, this litigation cannot
involve Harter in his status as a director of HomeUSA, and thus the indemnity clause does not apply,
and it should not have to pay his attorney's fees for defending the action.
            As quoted above, the indemnity provision serves to broadly protect a director or agent who
is acting on behalf of the company. The basic claim raised by Loy against Harter was that he acted
to induce Loy to waive a contract clause and that Harter promised to give Loy some form of
compensation for so doing. The evidence shows that Harter had conversations with Loy, in the
hallway, but the version believed by the fact-finder was that the conversations did not result in action
damaging in any respect to HomeUSA.
            The lawsuit, however, is clearly connected with activities that occurred while the sale was
being negotiated. Even though the alleged (but not found to exist) agreement would have been
between Harter (or his companies) and Loy, and even though Harter (and Loy) obviously reaped a
substantial personal gain when the sale went through because of the premium sales price of the stock,
the trial court found that Harter did not act outside the parameters of a director and that his actions
were taken in his effort to cause the merger for the good of the stockholders as a whole.
            Under those facts, we cannot conclude the trial court erred by reaching the conclusion that
the lawsuit was brought by Loy against Harter for actions taken as a director on behalf of HomeUSA. 
Because we so hold, we need not address the arguments based on HomeUSA's bylaws or Texas'
common law. We affirm the portion of the judgment directing Fleetwood to indemnify Harter.



            We reverse Fleetwood's judgment against Loy and remand it for further proceedings in
accordance with this opinion. Otherwise, we affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          February 9, 2004
Date Decided:             February 10, 2004