NUMBER 13-04-174-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

DEBORAH SUE MCSHANE AND 

JAMES PATRICK MCSHANE,                                                      Appellants,

 

                                                             v.                                

 

BAY AREA HEALTHCARE GROUP, LTD.,

INDIVIDUALLY AND D/B/A THE 

CORPUS CHRISTI MEDICAL CENTER - 

BAY AREA, ET AL.,                                                                        Appellees.

 

       On
appeal from the 28th District Court of Nueces County, Texas.

 

 

                                          O
P I N I O N

                                                              

                          Before
Justices Yañez, Castillo, and Garza

                                         Opinion
by Justice Garza

 








Appellants, Deborah Sue
McShane and James Patrick McShane, individually and as next friends of Maggie
Yvonne McShane, a minor, sued appellees, Bay Area Healthcare Group, Ltd.,
individually and d/b/a Corpus Christi Medical Center B Bay Area; and Columbia Hospital Corporation of Bay
Area, individually and as a partner of Bay Area Healthcare Group, Ltd.  Appellants sought to recover for injuries
sustained during Deborah McShane=s labor and delivery of her daughter, Maggie, who is
severely brain damaged and suffers from cerebral palsy, developmental
disability, and mental retardation. 
Appellants alleged that the negligence of appellees, either directly or
vicariously through the negligence of their nursing staff, caused Maggie=s injuries. 
The case was tried to a jury, which returned a 10-2 verdict against
appellants.  The trial court entered a
take-nothing judgment against appellants and denied their motion for new
trial.  Appellants now raise seven issues
on appeal.  We conclude that the trial
court erred by admitting evidence of appellants=
superseded pleadings, which show that, at one time, appellants had sued not
only appellees but also two physicians involved in Maggie=s delivery. 
Having reviewed the entire record, we further conclude that the error
probably led to the rendition of an improper verdict.  We therefore reverse the judgment of the
trial court and remand the case for further proceedings consistent with this
opinion.                                                                                                                                       

I. Attorney Misconduct








In their first issue, appellants contend that the
trial court erred by failing to order a new trial because of the misconduct of
appellees= counsel during trial.  Appellants complain that counsel for
appellees Aengaged in misrepresentation and
mischaracterization,@ produced a Aconstant barrage of improper objections meant to
interrupt the flow of the examination [of witnesses] and to coach the
witnesses,@ engaged in Asidebars meant to prejudice the jury,@ and made an Aimproper reference to attorney=s fees.@  With the
exception of counsel=s reference to attorney=s fees, which will be addressed below, appellants
have provided this Court with no authority, other than the Texas Lawyer=s Creed and the preamble to the state bar rules, to
establish that counsel=s behavior amounted to attorney misconduct.  See Tex.
R. App. P. 38.1(h).  Appellants
have also failed to provide this Court with any case law regarding attorney
misconduct as a basis for new trial.  See
id.  Although we agree with
appellants that an attorney must Anot knowingly misrepresent, mischaracterize,
misquote, or miscite facts to gain an advantage,@ we
must acknowledge that the trial court has broad discretion in deciding whether
to grant a new trial.  Champion Int=l Corp. v. Twelfth Court of Appeals, 762 S.W.2d 898, 899 (Tex. 1988) (orig. proceeding)
(per curiam).  We are also fully aware of
the trial court=s discretion to grant a new trial Ain the interest of justice,@ as well as the court=s
decision not to do so in this case.  See
id.  

To successfully challenge the trial court=s denial of a motion for new trial, appellants must
demonstrate that the trial court acted unreasonably, arbitrarily, or without
reference to guiding rules and principles. 
See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985); GJR Mgmt. Holdings, L.P. v. Raus,
126 S.W.3d 257, 260 (Tex. App.CSan Antonio 2003, pet. denied).  In reviewing a trial court=s order denying a motion for new trial, we make
every reasonable presumption in favor of the trial court=s ruling.  Jackson
v. Van Winkle, 660 S.W.2d 807, 809B10 (Tex. 1983); Raus, 126 S.W.3d at 260.  Without appropriate citations to any
controlling authorities regarding attorney misconduct as a basis for new trial,
we cannot conclude that appellants have carried the burden of showing an abuse
of discretion.  See Tex. R. App. P. 38.1(h).  It would be injudicious and patently unfair
for this Court to conclude, without the benefit of any relevant law, that the Atrial court acted unreasonably, arbitrarily, or
without reference to guiding rules and principles.@   








In overruling appellants= issue for failure to present authority to establish
an abuse of discretion, we also find it significant that appellants= counsel failed to request a mistrial based on any
of the alleged instances of attorney misconduct until after the jury=s verdict was returned.  For instance, at one point in the trial,
appellants= counsel objected Ato the
continual sidebar remarks@ from opposing counsel.  The objection was sustained by the trial
court, which instructed counsel Anot to do that again@ or Athere will be fines assessed.@  See Tex. R. Civ. P. 269(f) (directing the
trial court to rigidly suppress any sidebar remarks).  Appellants contend that counsel=s remarks tainted the entire trial, but counsel for
appellants did not ask the trial court to declare a mistrial at the time of the
objection or at any time before the jury=s verdict was returned.  

As mentioned above, appellants also complain that
opposing counsel made an improper reference to attorney=s fees during his cross-examination of appellants= expert on damages. 
As with the improper sidebar remarks, appellants= counsel lodged a timely objection, which was
sustained by the trial court.  The jury
was instructed to disregard the reference to attorney=s fees, and counsel for appellants seemed content
with this remedial action.  Counsel did
not request a mistrial.  On appeal,
appellants complain that the remark probably caused the rendition of an
improper judgment, but they have failed to show how the instruction to
disregard counsel=s reference to attorney=s fees was inadequate to cure the harm created by
the reference.  Therefore, we cannot
conclude that the trial court abused its discretion by denying appellants= motion for new trial on this basis.          

 Appellants= first issue is overruled.

II.  Exclusion
of Expert Testimony








In their second issue, appellants contend that the
trial court erred by excluding the testimony of Arthur Shaw, their proposed
expert on the hospital=s standard of care. 
There is a clear mandate in Texas that medical decisions are to be made
by attending physicians.  Boney v.
Mother Frances Hosp., 880 S.W.2d 140, 144 (Tex. App.CTyler 1994, writ denied).  A hospital cannot practice medicine and
therefore cannot be held directly liable for any acts or omissions that
constitute medical functions.  Spinks
v. Brown, 103 S.W.3d 452, 456 n.4 (Tex. App.CSan
Antonio 2002, pet. denied). 
Nevertheless, a hospital may be directly liable for injuries arising
from its negligent performance of a duty that it owes directly to a
patient.  Denton Reg=l Med. Ctr. v. LaCroix, 947 S.W.2d 941, 950 (Tex. App.CFort Worth 1997, pet. denied).   One such duty is the duty to use reasonable
care in formulating the policies and procedures that govern the hospital=s medical staff and non-physician personnel.  Reed v. Granbury Hosp. Corp., 117
S.W.3d 404, 409 (Tex. App.CFort Worth 2003, no pet.).  In this case, appellants argued that
appellees breached this duty by failing to use reasonable care in formulating
the policies and procedures regarding the availability of personnel to perform
emergency neonatal resuscitation during the delivery of a baby.








The test used to determine the standard of care a
hospital is required to use in formulating its policies and procedures is what
a hospital of ordinary prudence would have done under the same or similar
circumstances.  LaCroix, 947
S.W.2d at 950 (citing Hilzendager v. Methodist Hosp., 596 S.W.2d 284,
286 (Tex. Civ. App.CHouston [1st Dist.] 1980, no writ)).  The standard of non-medical, administrative,
ministerial or routine care at a hospital need not be established by expert
testimony if the jury would be competent from its own experience to determine
and apply such a reasonable‑care standard.  Golden Villa Nursing Home, Inc. v. Smith,
674 S.W.2d 343, 349 (Tex.  App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.).  Of
course, if the alleged negligence is of such a nature as to be outside the
experience of a layperson, expert testimony is necessary to establish the
standard of care.  SunBridge
Healthcare Corp. v. Penny, 160 S.W.3d 230, 246B47 (citing Roark v. Allen, 633 S.W.2d 804,
809 (Tex. 1982)).

In this case, the parties agree that expert
testimony was necessary to establish the standard of care in the formulation of
policies and procedures regarding the availability of personnel to perform
emergency neonatal resuscitation during the delivery of a baby.  The parties disagree as to what type of
expert would be qualified to testify to the standard of care.  Appellees argued at trial that Shaw, the
appellants= expert, was unqualified to offer expert testimony
because he had no training, education, or experience as a physician or
nurse.  According to appellees, only a
healthcare provider such a physician or nurse would be qualified to testify as
to the standard of care for a hospital. 
Appellees further contended that, even if Shaw were qualified to give
expert testimony, the questionable (i.e., purely subjective) methodology
supporting his expert opinion would render his testimony inadmissible.  Appellants argued that Shaw=s knowledge, skill, experience, training, and
education as a healthcare administrator qualified him to testify as to
appellees= failure to use reasonable care in formulating
policies and procedures.  The trial court
granted appellees= motion to strike, ruling that Shaw Alacks the qualifications to testify under Texas law.@








The trial court has broad discretion to determine
the admissibility of evidence.  Exxon
Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex. 2002).  For an expert=s
opinion testimony to be admissible, the expert must be qualified, the expert=s opinion must be relevant to the issues in the
case, and the expert=s opinion must be based upon a reliable foundation.  Id. at 628B29
(citing Tex. R. Evid. 702; Gammill
v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 720 (Tex. 1998); E.I.
du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex.
1995)).  It is well settled in Texas that
a trial court=s ruling on the admissibility of evidence will not
amount to reversible error unless the error probably led to the rendition of an
improper judgment.  Tex. R. App. P. 41.1(a); McCraw v.
Maris, 828 S.W.2d 756, 758 (Tex. 1992). 


Appellants contend that the trial court=s ruling probably led to the rendition of an
improper judgment because it excluded their only expert as to the standard of
care applicable to appellees. 
Notwithstanding appellees= representations to the contrary, it appears that
Shaw was, in fact, the only witness who would have testified in this regard for
appellants.  Nevertheless, for the
following reasons, we are unable to conclude that the trial court=s error, if any, in determining that Shaw was not
qualified as an expert probably led to the rendition of an improper
judgment.  








As explained above, an expert=s opinion testimony is admissible only if the expert
is qualified, the expert=s opinion is relevant to the issues in the case, and
the expert=s opinion is based upon a reliable foundation.  Zwahr, 88 S.W.3d at 628B29.  In this
case, the trial court ruled on only the first of these considerations.  The trial court excluded Shaw=s testimony after it concluded that Shaw was not
qualified as an expert, but appellees had also argued at great length that Shaw=s testimony was inadmissible because his opinions
were not based on a reliable foundation. 
As a reviewing court, we would be unable to conclude that the trial
court=s ruling on the first consideration amounted to
reversible error without also concluding that the testimony would have been
admissible given the second and third considerations enumerated above.  That is, in order to determine whether the
case turned on the particular evidence excluded, we must first determine
whether the evidence should have been admitted. 
See City of Brownsville v. Alvarado, 897 S.W.2d 750, 753B54 (Tex. 1995). 
At trial, it was appellants= burden to establish that the testimony was
admissible because the expert is qualified, the expert=s opinion is relevant to the issues in the case, and
the expert=s opinion is based upon a reliable foundation.  Zwahr, 88 S.W.3d at 628B29.  On
appeal, appellants have neglected to discuss whether Shaw=s opinions were based upon a reliable foundation, an
issue which was hotly contested before the trial court.  The brief filed by appellees maintains that
the trial court=s ruling should be affirmed on this ground, an
argument which is unacknowledged in either of appellants= briefs.  
Appellants have failed to make a key argument to support their issue on
appeal, and this Court will not endeavor to make it for them.  See Tex.
R. App. P. 38.1(h).  Accordingly,
appellants= second issue is overruled.   

III.  Improper
Cross-Examination of Expert Witness 








Appellants= third and fourth issues are closely related.  In their third issue, appellants complain
that the trial court abused its discretion by allowing counsel for appellees to
cross-examine one of their expert witnesses, Dr. Cardwell, regarding his prior
treatment of a patient.  In their fourth
issue, appellants complain that the trial court abused its discretion by
admitting the same patient=s medical records for the purpose of impeaching Dr.
Cardwell.  Although counsel for appellees
stated in open court, on the record, and before the jury, that he had in his
possession the medical records of Dr. Cardwell=s
former patient, those records were never offered or admitted into
evidence.  Nevertheless, it is apparent
from the record that counsel used the records to cross-examine Dr.
Cardwell.  Therefore, the real issue
presented by appellants= third and fourth issues is whether the trial court
abused its discretion by allowing counsel for appellees to impeach the
credibility of Dr. Cardwell by questioning him about his treatment of a former
patient.  We address appellants= third and fourth issues together as a single issue.
     

As a preliminary matter, appellees contend that the
error, if any, in this matter was waived by appellants= failure to ask the trial court (1) to strike the
evidence from the record, (2) to instruct the jury to disregard the evidence,
and (3) to declare a mistrial.  We agree
with this conclusion, but our reasoning differs from the argument made in
appellees= brief.            As this Court has explained
previously, to preserve error regarding inadmissible testimony, a party is
required to object to the complained‑of evidence, move for an instruction
to disregard, and then move for a mistrial.  Ortiz v. Ford Motor Credit Co., 859 S.W.2d
73, 77 (Tex. App.CCorpus Christi 1993, writ denied).  This process must continue only until the
party receives an adverse ruling from the court.  Id. 
A party should object every time inadmissible evidence is offered.  Duperier v. Tex. State Bank, 28 S.W.3d
740, 755 (Tex. App.CCorpus Christi 2000, pet. dism=d) (citing Tex.
R. App. P. 33.1).  If a party
objects to certain evidence, but later does not object when the same evidence
is introduced, the party waives its objection. 
Id. (citing Richardson v. Green, 677 S.W.2d 497, 501 (Tex.
1984)); see also Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907
(Tex. 2004).  A party can preserve error
to repeated offers of the same evidence by asking the court for a running
objection.  Ramirez, 159 S.W.3d at
907; Duperier, 28 S.W.3d at 755 (citing State v. Baker,
574 S.W.2d 63, 65 (Tex. 1978)).








When applied to the facts of this case, as stated
below, these precepts indicate that appellants failed to preserve their
complaints for appellate review.  During
an initial bench conference held at the time of the witness=s cross-examination, counsel for appellants made
very specific objections to the questions regarding the witness=s treatment of a former patient.  These objections were overruled by the trial
court.  When the jury was brought back
into the courtroom, appellees= counsel resumed the objectionable questioning of
the witness.  Counsel for appellants made
no further objections to this questioning, even though no running objection had
been requested or granted at that point. 
The witness eventually refused to answer any questions regarding his
treatment of the patient, arguing that he could not do so without violating
federal law because the patient had not executed a written release of
confidentiality.  

On its own accord, the trial court excused the jury
and held a second bench conference. 
During this second conference, appellants requested a running objection Aas to getting into anything with respect to another
case and another patient other than a prior inconsistent statement.@  The trial
court granted this running objection and stated that it was sustaining the
objection.  The court explained to both
sides, A[W]e=re not going to try a second lawsuit in this
lawsuit.@  Then, it
specifically stated that counsel for appellees would be allowed to question the
witness as to prior inconsistent statements by following the procedure outlined
in rule 613(a).  Tex. R. Evid. 613(a). 
Counsel for both sides stated on the record that they understood the
court=s ruling. 
Nevertheless, immediately after the jury was brought back into the
courtroom, counsel for appellees resumed his objectionable cross-examination of
the witness, questioning him about his prior treatment of the patient rather
than a prior inconsistent statement.  No
further objections were made by appellants= counsel. 
Counsel did not request that the objectionable testimony be struck from
the record or that the jury be given an instruction to disregard the
testimony.  No request for a mistrial was
made.  








Appellants now complain of the cross-examination
testimony.  For the following reasons, we
conclude that counsel=s actions at trial were insufficient to preserve
error for appellate review.  First, as to
the questioning that took place after the first bench conference but before the
second bench conference, no objections were made.  The error, if any, was therefore waived.  See Ortiz, 859 S.W.2d at 77.  Second, as to the questioning that took place
after the second bench conference, counsel failed to seek an adverse ruling by
requesting the trial court (1) to strike the evidence from the record, (2) to
instruct the jury to disregard the testimony, or (3) to declare a
mistrial.  Although the trial court had
already sustained counsel=s objections to this testimony during the second
bench conference, it was nevertheless incumbent on counsel to pursue the matter
until he received an adverse ruling from the trial court when the evidence was
offered again in violation of the court=s ruling.  See
id.  Accordingly, the error, if any,
regarding this testimony was waived.  See
id.; One Call Sys. v. Houston Lighting & Power, 936 S.W.2d 673,
677 (Tex. App.CHouston [14th Dist] 1996, writ denied) (holding
plaintiff waived its objection to inadmissible testimony by failing to request
further relief after trial court sustained its objection).   Finally, we are left with the
cross-examination testimony that was given before either of the bench
conferences were held.  Appellants
complain of the following exchange, which, when reviewed, shows that only the
witness made objections: 

Counsel:       And this was a patient of yours up in
Ohio, right?

 

Witness:       Yes, but I don=t see the relevance here.  If you want - - 

 

Counsel:       I=ll see if I can get to it, okay?

 

Witness:       Well, try to get to it because I see no
relevance.  And I think it=s not only confusing me, I think its confusing the
jury.

 

Counsel:
      Do you?

 

Witness:       Yes.








 

Counsel:       Well, let=s - - 

 

Witness:       Because we=re not
talking about that patient here.

 

Counsel:       Wait a minute.

 

Witness:       We=re talking about Ms. McShane, totally different set
of circumstances.

 

Counsel:       We=re talking about a patient who was under your care
who was carrying a major risk factor which was exacerbated by the fact that in
addition to that risk factor of diabetes she was noncompliant, didn=t show up for her appointments, all of which
increased dramatically the likelihood that she was going to give birth to a
macrosomic baby.  You=re here criticizing these doctors for not predicting
the possibility of shoulder dystocia, right? 
Aren=t you?

 

Witness:       My real criticism is not necessarily
failure to predict the size of the baby. 
My criticism is that Dr. Eubank and the nurses should not have used a
vacuum to deliver the baby.

 

Although appellants now take issue with this
exchange, counsel made no timely objection to it.  To be Atimely,@ an objection must be made prior to the witness
responding to the question if it is reasonably obvious that the question calls
for inadmissible evidence.  Beall v.
Ditmore, 867 S.W.2d 791, 794 (Tex. App.CEl
Paso 1983, writ denied).  Otherwise, counsel must object as soon as
practicable after the inadmissible answer is given.  Id. 
In this case, the record shows that the cross-examination continued and
was uninterrupted by any objections for a significant period of time following
the exchange documented above.  We
therefore have no choice but to conclude that counsel failed to Aobject as soon practicable after the inadmissible
answer is given.@  Id.  Accordingly, any complaint as to this
testimony was waived. 

For the foregoing reasons, appellants= third and fourth issues are overruled.   








IV. 
Superseded Pleadings

In their fifth issue, appellants argue that the
trial court erroneously admitted testimony regarding superseded
pleadings showing that Dr. Rothschild and Dr. Eubank were previously named in
the lawsuit as having committed acts of negligence that proximately caused the
damages, injuries, or harm claimed.  As a
preliminary matter, appellees contend that the complained-of evidence was
merely cumulative of other un-objected-to evidence and the error, if any, is
therefore harmless.  See Reina v. Gen.
Accident Fire & Life Assurance Corp., 611 S.W.2d 415, 417 (Tex. 1981)
(stating there is no reversible error if admissibility ruling involves
cumulative evidence).  Appellees argue
that Dr. Cardwell testified that he wrote his expert report knowing that the
doctors were not parties to the suit and that he nevertheless included numerous
opinions concerning his criticisms of the physicians (for not predicting
shoulder dystocia).  The testimony relied
upon by appellees is the following cross-examination of Dr. Cardwell by
appellees= counsel:

Counsel:       Can you answer my question?

 

Witness:       Please state it.

 

Counsel:       Yes,
sir.  You knew as you wrote that expert
report that this was going to form the basis in part for the accusations
against nurses and doctors in this lawsuit. 
You knew that right?

 

Witness:       I knew that.  And sir, let me explain.  When I wrote this report on August 21st, I
knew at the time that I wrote that report that the doctors were not a party to
the lawsuit.  But I tried to be fair and
put all my opinions concerning the criticism of all of the healthcare
providers.  I am critical of the doctors
for not predicting shoulder dystocia, but that=s also
a joint responsibility with the nurses.

 

Counsel:       Are you through?

 

Witness:       Yes.

  








In addition, appellees claim that the complained-of
evidence was also cumulative of testimony given by Dr. Rothschild and Dr.
Eubank.  In relevant part, Dr. Rothschild
testified as follows:

Appellees=
Counsel:          Now, Doctor, do you recall that [counsel for appellants]
said he was not fussing at you?  At one
time in this case he was fussing at you, was he not?  Weren=t you sued, originally?

 

Appellants=
Counsel:        May it please the Court, we would like to object for the
record to going into this line of questioning. 
And we would like to, if we have permission rather than restating all of
the objections, adopt specifically and incorporate by reference, all of the
ones previously made with respect to this line of questioning?

 

The Court:
                           All right.  Your objection is overruled and your
objection is continued.  And all
arguments are on the record, they are preserved on the record.

 

Appellants=
Counsel:        So it is continued and preserved - - I=m sorry, Your Honor, I apologize.  It=s my fault, I can=t
hear.

 

The Court:
                           Yes.

 

Appellants=
Counsel:        Thank you.

 

Appellees=
Counsel:          Tell the ladies and gentleman of the jury about the claims
or the fussing at you that was going on in this case, please.

 

Witness:                               Well, yes.  I was sued for $50 million in this case.  And my involvement is what you heard it
was.  I was in my office and I was asked
to render emergency aid and I ran to help and did the best I could.  It didn=t work out.  I=m sorry for them. 
But if you are in a car and see a wreck and you stop to help, you do the
best you can and get sued for $50 million. 


 

Appellees=
Counsel:          Was there a claim made that you - - your care was beneath
the standard of care in this case?








 

Witness:                               Yes.  $50 million worth. 

 

Appellees=
Counsel:          By the McShanes?

 

Witness:                               Yes. 

 

Appellees=
Counsel:          And they said, I think [counsel for appellants] said he wasn=t fussing at Dr. Eubank.  Was Dr. Eubank also at one time a party in
this case?

 

Witness:                               Yes.

 

Appellees=
Counsel:          A claim made that his care was beneath the standard of care
and caused the injuries in this case?

 

Witness:                               Yes.  

 

As the foregoing excerpt from the reporter=s record demonstrates, the trial court granted
appellants= counsel a running objection to the line of
questions regarding the doctors= prior status as defendants in the lawsuit.  Subsequently, Dr. Eubank testified in
response to a similar line of questions:

Counsel:
      Doctor, you were sued in this case,
weren=t you?

 

Witness:
      Yes, I was. 

 

Counsel:
      Do you know why you are not sued
now?

 

Witness:       Not really.

 

Counsel:       And do you know why the hospital is the
only Defendant in this case and these nurses are accused of causing this
injury?

 

Witness:       I have no idea. 

 








Having reviewed the testimony that appellees contend
is cumulative of the complained-of evidence, we make the following
observations:  (1) Dr. Cardwell did not
testify that any of the doctors had ever been sued; (2) appellants properly
objected to Dr. Rothschild=s testimony; and (3) appellants properly objected to
Dr. Eubank=s testimony by the running objection granted by the
trial court.  See Ramirez, 159
S.W.3d at 907 (holding that recognition of running objection for more than one
witness is appropriate if it clearly identifies the source and specific subject
matter of the expected objectionable evidence).           Based
on these considerations, we conclude that appellees= cumulative-evidence argument is incorrect for at
least two reasons:  First, Dr. Cardwell
never testified that the doctors had ever been sued.  His testimony could not be cumulative of the
complained-of evidence.  Second, the
testimony of Dr. Rothschild and Dr. Eubank is the complained-of
evidence, and it was properly objected to. 
We will not hold that the error, if any, is harmless because the
complained-of evidence was cumulative of itself.  We therefore proceed to decide whether the
trial court erred by admitting evidence that Dr. Rothschild and Dr. Eubank had
been previously sued by appellants.    

The issue before us is whether the trial court erred
by allowing testimony regarding statements made in superseded pleadings.  It is well settled that a party who
judicially admits a fact in a live pleading cannot later challenge that
fact.  Houston First American Savings
v. Musick, 650 S.W.2d 764, 767 (Tex. 1983). 
Thus, any fact that is judicially admitted is conclusively established
in the case.  Id.  If a fact is judicially admitted, the
pleadings need not be admitted nor other evidence presented to prove the
judicial admission.  Id.  








If a pleading is abandoned, superseded, or amended,
it ceases to be a judicial pleading and statements in such a pleading cease to
be judicial admissions.  Drake Ins.
Co. v. King, 606 S.W.2d 812, 817 (Tex. 1980).  Evidence of statements in such pleadings may
be admissible but only as ordinary admissions. 
See Kirk v. Head, 152 S.W.2d 726, 729 (Tex. 1941); Loy v.
Harter, 128 S.W.3d 397, 407 (Tex. App.CTexarkana 2004, pet. denied); Huff v. Harrell,
941 S.W.2d 230, 239 (Tex. App.CCorpus Christi 1996, writ denied).  

Admissions are statements made or acts done by an
opposing party, or on his behalf, which amount to a prior acknowledgment by
such party that one of the facts relevant to the issues is not as he now
claims.  Harrell, 941 S.W.2d at
239.  An admission against interest in an
abandoned pleading may be used as evidence against the pleader, but it is not
conclusive.  Id.  Like any other utterance or statement, if the
abandoned pleading is inconsistent with the party=s
present position at trial, then the statement in the abandoned pleading is
admissible and receivable into evidence as an admission, and this rule is
recognized even though the superseded pleading is not verified and bears no
file mark.  Id.  In order for a petition to qualify as an
admission, it must contain some statement relevant to a material issue in the
case and be inconsistent with the position taken by the party against whom it
is introduced.  Id. 








A bench conference was held before Dr. Rothschild
and Dr. Eubank gave their testimony.  At
that time, counsel for appellants argued that testimony regarding the
plaintiffs= superseded pleadings could not be admitted because
(1) they contained no prior inconsistent position or statement; (2) they were
irrelevant to the case; and (3) their probative value, if any, was greatly
outweighed by their unfairly prejudicial effect.  Counsel for appellees argued, AThat is an unbroken, allegedly, unbroken chain of
negligence involving the physicians and the nurses for which all were sued;
that was plaintiffs= claim from the outset.  The fact they are now attempting to run away
from that is inconsistent with their originally stated position.@  The trial
court ruled, AThe prior pleadings will come in at the appropriate
time.@ The doctors subsequently testified, and as
documented above, counsel for appellants secured a running objection to the
testimony arising from the entire line of questioning.    

This Court has reviewed the five superseded
pleadings filed by appellants, as well as appellants= live pleading, their sixth amended petition.  We have identified no statement or position
in the superseded pleadings that is inconsistent with appellants= live petition. 
All of appellants= pleadings are consistent with appellants= theory at trial, which was that appellees= negligence, either directly or indirectly (through
the actions of its nursing staff), was a proximate cause of the injuries and
damages suffered by appellants.  At
trial, appellees made much of the fact that appellants dropped their claims
against the doctors, but all parties agree that the claims were dismissed
without prejudice, meaning they theoretically could be re-asserted in a new
lawsuit.  In short, none of the pleadings
ever took the position, much less stated, that either Dr. Rothschild or Dr. Eubank
was free of culpability.  Likewise, none
of the pleadings ever alleged that an Aunbroken chain of negligence@ involving the doctors, nurses, and appellees was
the only cause of the injuries alleged.  









To the contrary, the first three petitions filed by
appellants alleged that the negligence of Dr. Rothschild and Dr. Eubank Ataken separately or collectively, constitute a
proximate cause of the injuries and damages claimed herein.@ These same petitions also alleged that Aduring the hospitalization in question, the
defendant hospital was directly negligent in one or more particulars and such
acts and/or omissions, taken separately or collectively, constituted a
proximate cause of the injuries and damages claimed herein.@  The
petitions further alleged that Aduring the hospitalization in question the agents,
servants, and/or employees of the defendant hospital involved in the care or
treatment [with the exception of defendants Eubank and Rothschild] . . .  were negligent in one or more particulars and
such acts and or omissions, taken separately or collectively, constitute a
proximate cause of the injuries and damages claimed herein.@     

Appellants= third amended petition (the fourth petition filed)
did not include any allegations of negligence against Dr. Rothschild or Dr.
Eubank.  Instead, appellants pursued
claims solely against appellees.  Even in
the third amended petition, however, appellants alleged that the negligence of
appellees was Aa proximate cause@ of
the injuries and damages claimed. 
Appellants never alleged that the negligence of appellees was Athe sole proximate cause@ of the injuries and damages claimed.     

Appellants subsequently filed a fourth, fifth, and
sixth amended petition. Each of these petitions named only appellees as
defendants.  As with the third amended
petition, these petitions each alleged that the negligence of appellees was Aa proximate cause@ and
not Athe sole proximate cause@ of the injuries and damages claimed.    








We have reviewed the record and find nothing
inconsistent in appellants= superseded pleadings, live pleading, or position at
trial.  It is well settled in Texas that
there may be more than one proximate cause for purposes of negligence.  See, e.g., First Assembly of
God, Inc. v. State Utils. Elec. Co., 52 S.W.3d 482, 493 (Tex. App.CDallas 2001, no pet.).  Thus, the claim in appellants= live petition that the negligence of appellees was Aa proximate cause@ of
their injuries and damages does not mean that appellees= negligence was Athe
sole proximate cause@ of the injuries and damages.  See id. (contrasting the concepts of Aa proximate cause@ with Aa sole proximate cause@).  It also does not follow that the negligence
of Dr. Rothschild or Dr. Eubank was not Aa proximate cause@ of
the injuries.  The live petition simply
indicates that Dr. Rothschild and Dr. Eubank were not ultimately sued.  Thus, the only difference between appellants= superseded and live pleadings is that Dr.
Rothschild and Dr. Eubank were once included in the lawsuit and then dropped.

The issue before us is whether this difference alone
is a sufficient basis to conclude that the statements in the superceded
pleadings amounted to admissions.  The parties each rely on the same
case to prove the correctness of their respective positions:  Texaco, Inc. v. Pursley, 527 S.W.2d
236, 240 (Tex. App.CEastland 1975, writ ref=d n.r.e.).  In
Pursley, a defendant offered into evidence the plaintiff=s original petition, in which the plaintiff had
alleged actions for negligence against four different defendants.  Id. 
The plaintiff ultimately went to trial on his first amended original
petition, which alleged actions for negligence against only two
defendants.  Id.  The trial court refused to admit the
superseded pleading.  Id.  On appeal, the reviewing court noted that Ait is well settled that the doctrine invoked applies
only as between inconsistent remedies or demands; and to make them inconsistent
one action must allege what the other denies, or the allegations in one action
must necessarily repudiate or be repugnant to the other.@  Id.
(citing Alexander v. Harris, 254 S.W. 146, 149 (Tex. Civ. AppCFort Worth 1923, writ ref=d).  The
reviewing court then upheld the trial court=s
ruling, holding that the original petition was not inconsistent with the trial
pleadings simply because two defendants were dropped.  Id.    








Appellees argue that the court=s holding in Pursley supports their position
because the two defendants who were dropped in that case actually settled with
the plaintiffs, whereas the doctors in this case did not.  See id.  We are unpersuaded by this argument.  The Pursely court did not attach any
significance to the fact that the dropped defendants had settled with the
plaintiff.  This observation was made in
passing, after the court had concluded that the pleadings were not
inconsistent.  See id.  The fact that the defendants had been dropped
because they settled was not, as appellees suggest, a consideration used to
determine whether there was an inconsistency that would make the superseded
pleading relevant.   See id.   This is evident from the fact that the court
first concluded there was no inconsistency in the pleadings and then mentioned
that the dropped defendants had settled with the plaintiff.  See id.        

Appellants= pleadings did not request inconsistent remedies or
make inconsistent demands.   See id.  None alleged what the others denied.  See id.  We therefore conclude that the statements in
the superceded pleadings were not admissions and were therefore
inadmissible.  See Harrell, 941
S.W.2d at 239.  The trial court abused
its discretion by allowing witnesses to testify regarding statements made in
the superceded pleadings.   








We must now determine whether the trial court=s error amounts to reversible error.  To do this, we must determine whether the error
was reasonably calculated to cause and probably did cause rendition of an
improper judgment in the case.  See Tex. R. App. P. 41.1(a); First
Employees Ins. Co. v. Skinner, 646 S.W.2d 170, 172 (Tex. 1983); Nix v.
H.R. Mgmt. Co., 733 S.W.2d 573, 576 (Tex. App.CSan Antonio 1987, writ ref=d n.r.e.). 
The supreme court has found it impossible to prescribe a specific test
for this determination, and it has therefore become a judgment call entrusted
to the sound discretion and good sense of the reviewing court from an
evaluation of the whole case.  Nix,
733 S.W.2d at 576 (citing Lorusso v. Members Mutual Ins. Co., 603 S.W.2d
818, 821 (Tex. 1980)); see also Ponder v. Texarkana Memorial Hosp., Inc.,
840 S.W.2d 476, 479 (Tex. App.CHouston [14th Dist.] 1991, writ denied).  Some courts have held that when evidence is
sharply conflicting and the case is hotly contested, any error of law by the
trial court will be reversible error.  Stergiou v. Gen. Metal Fabricating Corp.,
123 S.W.3d 1, 6 (Tex. App.CHouston [1st Dist.] 2003, pet. denied); Hill v.
Heritage Resources, 964 S.W.2d 89, 136 (Tex. App.CEl Paso 1997, no pet.); Nix, 733 S.W.2d at
576.

Having reviewed the entire record, we conclude that
the evidence was Asharply conflicting@ and
that the case was indeed Ahotly contested.@  As discussed above, the exclusion of Shaw=s testimony rendered appellants= theory of direct corporate liability unworkable, as
Shaw was appellants= only expert witness to testify to appellees= standard of care. 
Nevertheless, appellants had two theories of liability against
appellees.  The other theory was based on
vicarious liability for the negligence of appellees= agents, servants, and employees (other than the
doctors).  Both sides produced Asharply conflicting@
evidence on this theory.  Thus, although
one of appellants= theories of recovery failed because of the trial
court=s ruling on Shaw=s
testimony, the case was still Ahotly contested@ because appellants=
second theory remained viable.  Of
course, as the reviewer of a cold record, this Court is no way positioned to
evaluate or declare the precise effect that the inadmissible evidence had on
the jury=s deliberations. 
See Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex.
2004) (A[W]hether erroneous admission is harmful is more a
matter of judgment than precise measurement.@).  At best, we can note that the case was hard
fought by both sides.  It is difficult,
if not impossible, for this Court to determine whether the jury=s verdict hinged on the inadmissible evidence. 








Nevertheless, we can discern a distinct pattern in
counsel=s use of the inadmissible evidence to relieve
appellees of liability simply because the doctors had been dropped from the
suit.  The pattern began during the jury
selection process, when counsel for appellees stated before the panel of
prospective jurors, A[A]t least three of these doctors [are] . . .
probably going to testify in this case and they have been sued at one time by
the Plaintiffs.@[1]  Then, at
trial, counsel tried to establish that, if anyone was responsible for the
injuries, it was the doctors.  Counsel
asked Dr. Cardwell how it was that the nurses could be negligent when the
doctors had failed to predict the birth complications giving rise to the baby=s injuries. 
Counsel then emphasized repeatedly that the doctors had actually been
sued at one point but were no longer being sued.  Dr. Rothschild testified that he had been sued
for $50 million.  Dr. Eubank testified
that he too had been sued and that, for some unknown reason, he had been
dropped from the suit.  Counsel asked Dr.
Eubank why appellees were the only ones being sued, but Dr. Eubank did not know
why.  During closing argument, counsel brought
this up again, asking the jury:  AWhy is it that the doctor isn=t here and this big hospital is?  There is a pretty good common sense answer to
that, and I=ll leave it up to you to answer the question for
yourselves.@ 








From the foregoing facts, it is apparent that
counsel asked the jury to relieve appellees of liability simply because
appellants had previously sued the doctors, who were allegedly much more
culpable than appellees, and then dropped their claims for no apparent reason,
allowing for the inference that even the claims against the doctors had been
frivolous.  If the claims against the
doctors were frivolous, then surely the claims against the hospital (i.e.,
appellees) were also frivolous.  Although
we see nothing preventing counsel from defending appellees by proving that the
actions of one or both of the doctors was Athe sole proximate cause@ of the injuries, we think it is highly improper to
do so by relying on superseded pleadings which show that the doctors had been
sued at one point and then dropped from the lawsuit.  In this case, such evidence was unfairly
prejudicial because it allowed the jury to infer that the claims against
appellees were frivolous solely because substantial claims against the doctors
had been filed and then dropped without explanation. 

We recognize that this was a hard-fought case.  With all due candor, we also recognize that
we have no way of knowing why the jury reached the verdict it reached.  Nevertheless, we think it would be
disingenuous to brush aside as harmless an error that pervaded all stages of
trial, from jury selection, expert witness testimony, to closing argument.  As demonstrated above, the error was
reasonably calculated to cause the rendition of an improper judgment.  Because this case was so close, we conclude
that the error probably led to the rendition of an improper judgment.  Accordingly, appellants= fifth issue is sustained.

V.  Conclusion

Having sustained appellants= fifth issue, we reverse the judgment of the trial
court and remand for a new trial.  We do
not reach appellants= sixth or seventh issues.  See Tex.
R. App. P. 47.1.                                                    

 

_______________________

DORI CONTRERAS GARZA,

Justice

 

Dissenting Opinion by 

Justice Errlinda Castillo.

 

Opinion delivered and filed 

this the 6th day of October, 2005.

                                                                               











[1] 
Counsel for appellants objected to this statement, requested the court
to instruct the jury panel to disregard the statement, and asked for a
mistrial, but his requests were overruled.